UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Martha Ward, | ) | C/A No. 3:03-3239-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **CLASS CERTIFICATION ORDER** |
| | ) | |
| Dixie National Life Insurance Company | ) | |
| and National Foundation Life Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the court on the plaintiff's motion for class certification. With this

motion, the plaintiffs seek to have the court certify the following class:

> All persons insured during the class period under cancer policies from Dixie
> National Life Insurance Company where Dixie promised to pay to the insured
> the "actual charges" incurred for certain medical services, but instead paid not
> the actual charges but rather the (lesser) amount that the insured's primary
> health insurer negotiated with the healthcare provider to pay for the medical
> procedure. The cancer policies are identified as Dixie policies numbered
> CP1004, CP-1001, CP-1001A, CP-1003, CP-1005, or other cancer policies
> regardless of the internal number assigned the policy by Dixie. Excluded from
> the proposed Class are the officers, directors, and employees of either of the
> defendants. The Class Period is the maximum length of time not time-barred.

The parties have fully briefed the issues and, after reviewing the briefs and hearing oral

argument, the court grants the motion in part and denies the motion in part as detailed below.

FACTS

On August 26, 1990, the plaintiff contracted with Dixie National Life Insurance Company ("Dixie") to purchase a cancer policy. The policy provided that the insurer would pay all actual charges for certain medical procedures.  In 1994, National Foundation Life Insurance Company ("National") purchased from Dixie the plaintiff's cancer policy via an assumption reinsurance agreement. In late 1994, Central United Insurance Company ("Central") assumed many policies of insurance from Dixie, including policies similar to that of the plaintiff. The policies assumed by Central were in states other than South Carolina. The plaintiff is suing for breach of the terms of the cancer policy. The plaintiff contends that although the insurance contract provided that actual charges would be paid, the defendants paid charges negotiated by the insured's primary insurer. The "actual charge," as defined by the plaintiff, is the amount billed a patient by a healthcare provider. The "negotiated fees" is the amount which may be accepted by the medical provider pursuant to an agreement with the insured's primary insurer. The defendant defines "actual charges" as the actual amount the insured would be liable for.

The plaintiff has moved to 1) certify this action as a class action; 2) adopt the proposed class definition; 3) appoint Ward as class representative; and 4) appoint lead plaintiff's counsel as class counsel. The court heard oral argument on January 19, 2005.

DISCUSSION

*I. The South Carolina Door Closing Statute*

After reviewing the memoranda filed in connection with plaintiff's motion for class certification and hearing oral argument, the court requested that the parties provide additional briefing on the effect of the South Carolina door closing statute, S.C. Code § 15-5-150, on the potential out-of-state class members.

A determination of whether the South Carolina door closing statute applies to the proposed class is important because, as presently defined, the class includes policyholders who are not residents of South Carolina. For the reasons which follow, the court has determined that the door closing statute does apply to this case, and that for this reason, any class certified must be limited to South Carolina residents only.

The S.C. door closing statute provides:

> An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:
>     (1) By any resident of this State for any cause of action; or
>     (2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150 (1976).

In *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739-40 (4th Cir. 1980), the Fourth Circuit held that a federal court exercising diversity jurisdiction must apply § 15-5-150 unless countervailing federal considerations are present. The Fourth Circuit confirmed that in *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, n.3 (4th Cir. 1993).

The plaintiff asserts that *Bell v. Monsanto Corp.*, 579 S.E.2d 325 (2003) altered the

federal court's requirement to apply § 15-5-150. In *Bell*, the South Carolina Supreme Court examined whether the door closing statute limits a class action against a foreign corporation in a state court. In reaching its conclusion, the South Carolina Supreme Court distinguished *Central Wesleyan* and stated that the door closing statute would not apply to federal suits. Although the plaintiff relies heavily on this dicta, it is not controlling in this court. It is the province of the federal courts, not state courts, to determine what law is to be applied in the federal courts. Thus, in light of Fourth Circuit case law, the court finds that the South Carolina door closing statute, § 15-5-150, is applicable in this case unless there is a countervailing federal interest as stake.

In *Central Wesleyan*, the countervailing federal policy was the interest in consolidating asbestos litigation. The plaintiff argues that there are countervailing federal policies present in this case: judicial economy and efficiency. Judicial economy and efficiency will potentially be an issue in every case. These justifications are insufficient to constitute a countervailing federal policy and do not prevent the application of the South Carolina door closing statute in this case.

The plaintiff also asserts that because the lead plaintiff is a South Carolina resident, she meets the requirements of the door closing statute. This approach ignores the actual holding of *Bell* that each member of a class action must meet the requirements of § 15-5-150.

The court finds that § 15-5-150 applies and each member of the class must meet the requirements of this statute. Therefore, the class will be limited to South Carolina residents.

*II. Class Certification*

4

Class certification is governed by Fed. R. Civ. P. 23. Rule 23(a) and (b) must be satisfied before the court may certify the class. Rule 23(a) provides four requirements which must *all* be met: (1) numerosity; (2) commonality; (3) typicality; *and* (4) fair representation. Rule 23(b) provides that *one* of the following three requirements must be met: (1) prosecution of separate actions by or against individual members of the class would either create a risk of inconsistent adjudications, establish incompatible standards of conduct for the party opposing the class, or substantially impair non-party members' ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class as a whole thereby making injunctive or declaratory relief appropriate; *or* (3) the court finds that questions of law or fact common to class members predominate over questions affecting only individual members *and* that a class action is superior to other available methods of a fair adjudication.[1] The plaintiff is requesting certification under Rule 23(b)(3). When seeking certification under Rule 23(b)(3), the plaintiff must demonstrate two additional requirements: predominance and superiority.

A.     *Burden of Proof and Standard for the Court*

"The party seeking certification bears the burden of proof." *Leinhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *Int'l Woodworkers of America v. Chesapeake Bay Plywood Corp*, 659 F.2d 1259, 1267 (4th Cir. 1981)).

---

[1] When certifying a class under Rule 23(b)(3), the court considers the following factors: (A) the interest of the class in individually controlling the prosecution or defense of separate actions; (B) existing litigation; (C) desirability of concentrating the litigation in a particular forum; and (D) difficulty of managing the class action.

The Fourth Circuit, "in reviewing the class certification decisions of the district courts under Rule 23, has generally afforded great deference to the district court's determinations. . . ." *Simmons v. Poe*, 47 F.3d 1370, 1380 (4th Cir. 1995). "A court has broad discretion in deciding whether to allow the maintenance of a class action . . . . The determination of a district court that an action does not meet the requirements of a class action will not be disturbed unless it is clearly erroneous." *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986).

B.     *Rule 23(a) Requirements*

The Fourth Circuit has held Rule 23(a) permits a class action only if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there exists questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the entire class; and
> (4) the representative parties will fairly and adequately protect the interest of the entire class.

*Simmons*, 47 F.3d at 1380.

1.     *Numerosity:  Rule 23(a)(1)*

"A class action may be maintained only if 'the class is so numerous that joinder of all members is impracticable.'"  7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1762 (2d ed. 1986).  When determining impracticability, four factors are relevant:  (1) the size of the class; (2) whether it is impossible for the court to obtain personal jurisdiction over some of the class members; (3) whether the rights and liabilities of the parties are in flux to such an extent that to make all members parties would result in great

6

inconvenience; and (4) the nature of the action. *Id.* No one factor will automatically satisfy Rule 23(a)(1). *Id.*

The defendant National has identified 130 South Carolina residents to whom it has paid benefits. Therefore, there are potentially about 130 class members in South Carolina. Because there are at least 130 potential class members, joinder is impractical. Because the class is limited to South Carolina residents by operation of the door closing statute, the court has personal jurisdiction of all of these potential class members. Therefore, the court finds that the numerosity requirement has been met.

> 2.     *Commonality: Rule 23(a)(2)*

Rule 23(a)(2) requires a question of law or fact common to the class. In other words, there must be at least one material fact or legal issue shared by every class member. *Holsey v. Armour & Co.*, 743 F.2d 199, 216-17 (4th Cir. 1984). The main issue shared by each potential class member is the meaning of the term "actual charges" under South Carolina insurance law. Whether the negotiated rate or the original billing rate is the "actual charge" is the central issue for each potential class member. The court finds that the commonality requirement of Rule 23(a)(2) is met.

> 3.     *Typicality: Rule 23(a)(3)*

Rule 23(a)(3) requires the representatives' claims be typical of the class as a whole. The named representatives' claims must be similar enough to those of class members to assure that the class's interests are vigorously prosecuted. Wright & Miller, *supra*, at § 1764. The

typicality requirement "is met if [plaintiff's] claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theories." *Simpson v. Specialty Retail Concepts, Inc.*, 149 F.R.D. 94, 99 (M.D.N.C. 1993).

In this case, the plaintiff's claim arises from the same course of conduct that gives rise to the claims of all potential class members. Every potential class member contracted to have coverage for "actual charges" and was paid the negotiated rates. Therefore, the court finds that typicality requirement has been met.

### 4.     *Fair & Adequate Representation: Rule 23(a)(4)*

"If the absent class members are to be conclusively bound by the result of an action prosecuted or defended by a party alleged to represent their interests, basic notions of fairness and justice demand the representation they receive be adequate." Wright & Miller, *supra*, at § 1765. Several factors are considered when making a determination on the adequacy of the representation. *Id.* First, even though *quality* of the representation is more important than *quantity*, most courts emphasize the number of representatives as compared with the total class membership when determining whether the named representatives fairly represent the class. *Id.* at § 1766. Competency of the representatives' counsel and the individual interest of the named parties are also considered. *Id.* The size of the named parties' interest is not determinative; however, a substantial financial stake in the outcome may indicate that class interests will be vigorously prosecuted. *Id.* at § 1767. Finally, it is imperative that the putative representative not have interests antagonistic to the class as a whole. *Id.* at § 1768.

The general rule is that to satisfy Rule 23(a)(4), "(1) counsel must be qualified,

experienced, and generally able to conduct the proposed litigation; and (2) plaintiffs' claims must be sufficiently interrelated with and not antagonistic to the class claims." *Lott v. Westinghouse Savannah River Co.*, 200 F.R.D. 539, 561 (D.S.C. 2000). "The adequacy of plaintiffs' counsel, like that of the individual plaintiffs, is presumed in the absence of specific proof to the contrary. Furthermore, courts generally hold that the employment of competent counsel assures vigorous prosecution." *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 330-31 (D.S.C. 1991) (internal citations omitted).

Plaintiffs have retained experienced counsel, who have extensive experience in complex litigations and class actions. Richard A. Harpootlian and Tobias G. Ward hereby are approved and appointed as class counsel.

The second consideration under Fed. R. Civ. P. 23(a)(4) is whether the interest of the named plaintiff coincides with the general interests of the class. Given the identity of claims between the named plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the class. Plaintiff Martha Ward is appointed as the class representative.

*C. Rule 23(b) Requirements*

Rule 23(b)(3) requires a proposed class to establish that "common issues predominate over individual ones and that a class action [is] superior to other available methods of adjudication." *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 423 (4th Cir. 2003).

*1.    Predominance*

The predominance requirement under Rule 23(b)(3) is "far more demanding" than the

commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). That is because "[t]he predominance inquiry 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 147 (4th Cir. 2001).

In this case, the main issue is that of liability—whether "actual charges" means the rate negotiated by a class member's third party insurance carrier or the amount originally billed by the physician. While the damages for each potential class member may differ, the damage calculation should be the same or similar for all potential claimants—"actual charges" less amount paid. Thus, the court finds that the predominance requirement is met.

> 2.    *Superiority*

Rule 23(b)(3) also requires a proposed class to establish that class treatment is "superior to other available methods for the fair and efficient adjudication of the controversy." Wright & Miller, § 1779. The Rule sets forth the following matters pertinent to the court's finding:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

The plaintiff argues that each individual plaintiff's interest in maintaining a separate action is minimal, because the expense of a court action, when weighed against any potential individual recovery, is cost prohibitive. The court agrees that this weighs in favor of certifying

10

the class. As for the second factor—other ongoing actions—the court is unaware of any ongoing actions.

The third factor requires the court to:

> evaluate whether allowing a Rule 23(b)(3) action to proceed will prevent the duplication of effort and the possibility of inconsistent results, . . .[and] . . . whether the forum chosen . . . represents an appropriate place to settle the controversy, given the location of the interested parties, the availability of witnesses and evidence, and the condition of the court's calendar.

Wright & Miller, § 1780. Because all potential class members are South Carolina residents and potential witnesses and evidence is located in South Carolina, this court is a proper forum for this controversy.

As for the fourth and final factor,

> [t]he severity of the management problems in a particular case may be reflected in such matters as the size or contentiousness of the class, the onerousness of complying with the notice requirements, the number of class members that may seek to intervene and participate, or the presence of special individual issues.

Wright & Miller, § 1780.  The defendant's objections to this factor are all based upon out-of-state class members. Because the South Carolina door closing statute limits this action to in state class members only, these concerns are no longer applicable. The proposed class is so large or contentious that it will present management problems. However, individual suits would be cost-prohibitive.  Thus, the court finds that the superiority requirement is met.

CONCLUSION

Having found that the requirements of Federal Rule of Civil Procedure 23 are met with respect to the South Carolina residents, the court grants the motion to certify the class in part.

11

The plaintiff's proposed class definition must be modified to reflect the South Carolina door closing statute's, § 15-5-150, exclusion of non-residents of South Carolina. The modified definition is as follows:

> All persons insured during the class period under cancer policies from defendant Dixie National Life Insurance Company, sold in South Carolina, where Dixie promised to pay to the insured the "actual charges" incurred for certain medical services, but where the insured was paid the amount that the insured's primary health insurer negotiated with the healthcare provider to pay for the medical procedure. The cancer policies include all cancer policies sold in the state of South Carolina regardless of the internal number assigned the policy by Dixie. Excluded from the class are the officers, directors, and employees of either of the defendants. The class period is the maximum length of time not time-barred.

Accordingly, the plaintiffs' motion for class certification is granted in part and denied in part as reflected in the above class definition. Notwithstanding this certification, the court reserves the right to decertify or otherwise modify the class at a future date. Within fifteen (15) days from the date fo this order, plaintiffs' counsel shall file and serve a proposed Class Notice. The defendants shall have fifteen (15) days thereafter within which to file objections, if any.

The defendant's motion to dismiss the second amended complaint has been rendered moot by the court's ruling on the applicability of the South Carolina door closing statute to limit the class.

IT IS SO ORDERED.

/s/ Joseph F. Anderson, Jr.
United States District Judge

May 5, 2005
Columbia, South Carolina

12

13